UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America

    Plaintiff

                                                Crim. Case No. 13-20911
v.                                              Hon. Sean F. Cox

Nicholas Hudson

    Defendant.
_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (Doc. # 56)

In September 2012, Defendant Nicholas Hudson ("Defendant") was charged in a federal criminal complaint with production of child pornography, sex trafficking of a minor and distribution of child pornography. (Doc. # 1). Defendant agreed to plead guilty as to one count of sex trafficking of children and a plea hearing was scheduled for January 29, 2014. (Doc. # 25, 28, 29). Defendant failed to appear to the plea hearing and an arrest warrant was issued. Over two and a half years later, Defendant was arrested in Sacramento, California and was extradited to Detroit. On August 30, 2016, Defendant was charged in a First Superseding Indictment with one count of sex trafficking of children, two counts of sex trafficking by force, fraud or coercion and one failure to appear count. The Superseding Indictment also includes forfeiture allegations.

The matter is currently before the Court on Defendant's Motion to Suppress Evidence, (Doc. # 56), wherein he contends that officers illegally entered his motel room without consent, tainting his arrest and subsequent searches of the room. The Government opposes the motion.

The Court held an evidentiary hearing and heard oral argument on January 4, 2017. For

1

the reasons set forth below, the court shall **DENY** Defendant's motion to suppress.

## BACKGROUND

The operative indictment in this action is the First Superseding Indictment, which was filed on August 30, 2016. (Doc. # 44). The Superseding Indictment charged Defendant with the following: Count One – Sex Trafficking of Children, in violation of 18 U.S.C. 1591(a)(1); Count Two – Sex Trafficking by Force, Fraud or Coercion, in violation of 18 U.S.C. § 1591(a)(1); Count Three – Sex Trafficking by Force, Fraud or Coercion, in violation of 18 U.S.C. § 1591(a)(1); and Count Four – Failure to Appear, in violation of 18 U.S.C. § 3146(a)(1). The Superseding Indictment also contains forfeiture allegations.

### Defendant's Motion to Suppress Evidence

On November 8, 2016, Defendant filed a Motion to Suppress Evidence. (Doc. # 56, Def.'s Mo.). In it, Defendant contends that officers "forcibly entered" and searched Defendant's motel room without Defendant's consent and without a warrant. (Def.'s Mo. at 2). A search of the room revealed three cellular phones and other electronic devices. Defendant asks the Court to suppress the evidence seized from Defendant's motel room. Defendant requests an evidentiary hearing. To support suppression, Defendant makes two arguments: (1) that the officers made a warrantless entry into room 235; and (2) that the officers conducted a warrantless search of room 235 before a search warrant was obtained.

The Government opposes the motion, asserting that: (1) Defendant did not have a reasonable expectation of privacy in the motel room; (2) that the physical evidence was seized pursuant to a search warrant; (3) that the evidence is admissible under the inevitable discovery doctrine; (4) that the evidence is admissible under the independent source doctrine; or,

alternatively, (5) that because the officers acted in good faith, the exclusionary rule should not apply here. (Doc. #61, Gov't Resp.).

## Evidentiary Hearing

With the issues so framed by the parties, this Court held an evidentiary hearing, and heard oral argument on January 4, 2017. The Government presented one witness at the hearing: Edward Price, a Detective with the Michigan State Police. Defendant presented the following witnesses: Mark Wood, a former Southfield police officer; Jeffrey Medici, a Southfield police officer; and Nick Cazan, a Southfield police officer.

The Government submitted into evidence: (1) Government's Exhibit C, the May 3, 2011 search warrant for motel room 235; and (2) Government's Exhibit D, an unredacted version of MV-1's prostitution advertisement on www.backpage.com. Defendant submitted into evidence: (1) Defendant's Exhibit 1 - a police report dated May 4, 2011, prepared by officer Wood; and (2) Def.'s Exhibit 1 - a police report dated May 3, 2011, prepared by Detective Price.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having observed the evidence and the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[1]

## Findings of Fact

On May 3, 2011, the Southfield Police Department was dispatched to the Red Roof Inn,

---

[1] To the extent that a finding of fact is more properly a conclusion of law, and to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

located in Southfield, Michigan, because of complaints from motel management regarding prostitution. At the time in question, Mark Wood was employed by the Southfield Police Department and was one of the officers that responded to the Red Roof Inn.[2] Officers Nick Cazan, Jeff Medici and Dave Adams, of the Southfield Police Department, were also dispatched to the scene.

Upon arrival, the officers proceeded to rooms 310 and 312 to investigate. During their investigation, Officer Wood encountered a young woman, appearing to be a minor, in the stairway between the second and third floor. After engaging her in conversation, Wood learned that the young woman was a minor (16 years old), that she resided in the Lansing area and that she was at the Red Roof Inn with her boyfriend, Nick Norwood. The Court shall refer to the minor as MV-1.

Officer Wood knew that the Southfield Red Roof Inn was frequently used for prostitution. This, coupled with the fact that MV-1 was a long way from Lansing and should have been in school, led Officer Wood to suspect that she was a prostitute. Accordingly, he asked MV-1 to accompany him to the motel manager's office so that he could continue to question her. Wood asked MV-1 for her phone number, which she provided. Wood then used the motel's computer to search the number on www.backpage.com. Backpage is an online classified website that lists products and services for sale. There is a section on the site for escorts, which is commonly used to facilitate prostitution. The phone number MV-1 provided Officer Wood returned an advertisement for prostitution on the Backpage website. The

---

[2] Mark Wood is no longer employed by the Southfield Police Department. However, at all times relevant to this action, Wood was a Southfield police officer and will be referred to as such for purposes of this Opinion & Order.

advertisement contained pictures of MV-1.

Officer Wood learned that MV-1 was staying in room 235 and that room 235 was rented out by an Ernest Young.[3] Wood subsequently contacted the other officers that had been dispatched to scene and asked that they check room 235 to see if anyone was there. Officer Wood and Officer Adams remained in the office with MV-1 and monitored the other officers' activity via radio. The officers advised Wood that they made contact with an individual in room 235. Wood, Adams and MV-1 then proceeded to the room. Officer Adams and MV-1 remained in the hallway outside room 235 while Wood spoke to the officers inside the room. Wood was advised that the officers had recovered a cellular phone from the toilet and that Defendant initially told the officers that his name was Jason Johnson. Defendant also had two identification cards on him. One for Ernest Young and one for Jason Williams.

At this point in time, Wood contacted Detective Edward Price of the Michigan State Police. Detective Price has been employed by the Michigan State Police for approximately 22 years. At the time in question, Price was an officer assigned to Southeast Michigan Crimes Against Children (SEMCAC) task force. While on the task force, Price investigated violent crimes against children, sex trafficking of minors and adults, and the exploitation of children. Price estimated being involved in over 100 juvenile sex trafficking investigations and over 1,000 cases where sex trafficking had occurred at a hotel.

During the phone call, Detective Price recalls Officer Wood briefing him on the events that had transpired at the Red Roof Inn. Specifically, that the Southfield Police Department had

---

[3] It was later determined that Defendant rented the room using the identification of Ernest Young.

been dispatched to the Red Roof Inn in Southfield to investigate adult prostitution. Officer Wood further advised that he had come across a minor in the hallway of the motel, that the minor was staying in room 235 with her boyfriend ("Nick") and that the minor had an advertisement on the Backpage website. Officer Wood informed Detective Price that the officers knocked on room 235's door and that Defendant opened the door. Upon seeing the police at the door, Defendant ran toward the bathroom. The officers followed, recovered a cellular phone in the toilet and detained Defendant in the room.

Detective Price made his way to the Red Roof Inn to corroborate the information relayed to him by Officer Wood. Detective Price met with Officer Wood in the office of the motel and was shown MV-1's advertisement on the Backpage website. Price then engaged in a conversation with MV-1. During their conversation, MV-1 admitted that she was the individual depicted in the Backpage advertisement. She also informed Price that the phone number associated with the advertisement belonged to her boyfriend, "Nick." MV-1 stated that the phone was used to facilitate dates. Nick had taken pictures of MV-1 on his phone and these were the pictures posted on the Backpage site. MV-1 further stated that she had made approximately $400 from dates that she had gone on that day and that the money was located in the safe in room 235.

Based on his training and experience, his conversation with MV-1 and the advertisement on the Backpage website, Detective Price believed he had sufficient probable cause to secure a search warrant for room 235. However, before obtaining a search warrant, Price made his way to room 235 because he still had to make arrangements for Defendant's arrest. Price recalls the room door being propped open. Several Southfield police officers were standing inside the room

while Defendant was seated on a chair. From the door, Price observed several cellular phones, condoms, money and identification cards. Defendant was detained, but not handcuffed. Price advised the Southfield officers that the SEMCAC task force was going to take the case and Defendant was subsequently placed under arrest.

Detective Price asked motel management to secure room 235 until a search warrant was obtained. On that same date, Price sought a search warrant for room 235 and any/all computers, cellular phones, cameras or electronic storage devices located therein. A county prosecutor reviewed the search warrant affidavit before it was presented to the magistrate judge. The affidavit for the search of room 235 provided, in pertinent part, that:

- [Detective Price] has received specialized training in ... sexual crimes/sexual exploitation against children crimes;

- On May 3, 2011, Southfield Police Department recovered MV-1 ... (16 years old) at the Red Roof Inn walking around. [MV-1] told Officer Wood that she was there with a guy name [sic] "Nick". She stated that she had a prostitution advertisement posted www.backpage.com. She stated that when customers show up to the room that "Nick" would come in and steel [sic] the money and make the guys leave. MV-1 stated that she was staying in room 235.

- On May 3, 2011, [Price] briefly talked to MV-1. MV-1 stated that "Nick" took the pictures of her on his cell phone and posted them on www.backpage.com. She stated that she had several dates today and made about $400. She stated that the money is in the same in the hotel room. She later told SA Garvick that in the past she has been prostituted out by "Nick" at his apartment in East Lansing.

- "Nick" was arrested in room 235 by Southfield Police Department for Affiant. [Price] was present during the arrest and observed several cell phones, money and condoms in the room. Nothing was seized; the room was secured by hotel management pending this search warrant.

- [Price's] training and experience show that suspects involved with prostitution will use computers to facilitate their criminal enterprise.

- [Price's] training and experience show that suspects involved with prostitution will use cell phones to facilitate their criminal enterprise.

- [Price's] training and experience over the past 16 years show that suspects involved with prostitution will hide, store and keep money for years.

A search warrant was signed by the magistrate judge on May 3, 2011. Price stated that he would have obtained a warrant even if Southfield police did not make entry into room 235 because his general practice was to either obtain consent or a warrant.

Detective Price and other members of the SEMCAC task force returned to the hotel and executed the search warrant. The officers seized several cellular phones, money, identification bearing the names Jason Williams and Ernest Ray Young and other documents.

## Conclusions of Law

"The Fourth Amendment bars unreasonable searches and seizures by the government." *United States v. Herndon*, 501 F.3d 683, 687 (6th Cir. 2007) (citing U.S. Const. Amend. IV). Evidence seized in violation of an individual's Fourth Amendment right is not admissible against him or her at trial. *United States v. Grant*, 920 F.2d 376, 389 (6th Cir. 1990) (citing *Wong Sun v. United States*, 371 U.S. 471, 486 (1963)). Defendant has the burden of proving that the violation of one of his constitutional or statutory rights justifies suppression of the evidence at issue. *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003).

**I.     Defendant Has Standing To Challenge Evidence Seized From Motel Room**

Initially, the Court must determine whether or not Defendant has standing to challenge the evidence seized from the motel room. Here, the Government unpersuasively argues Defendant did not have a reasonable expectation of privacy in motel room 235 because it was rented by an individual named Ernest Young.

Without question, "a hotel room may be the object of Fourth Amendment protection as

much as a home or an office." *United States v. Lanier*, 636 F.3d 228, 231 (6th Cir. 2011). In order to invoke the Fourth Amendment, however, Defendant must first establish that he has standing to challenge the entry and subsequent search of the room at issue. Specifically, Defendant must show: "(1) that he had 'an actual (subjective) expectation of privacy' in the room and (2) that this expectation was 'one that society is prepared to recognize as reasonable.'" *Id.* (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

Here, Defendant had an identification card bearing the name Ernest Young when he was arrested at the Red Roof Inn in 2011. Defendant also had identification for Ernest Young in his possession several years later when he was arrested and extradited from California to Detroit. And, notably, Detective Price testified that he believed Defendant rented the motel room using the identification of Ernest Young.

Based on the evidence in the record and the credible testimony of Detective Price, the Court finds that Defendant is the individual who rented room 235. As such, Defendant has standing to challenge the evidence seized because his subjective expectation of privacy was objectively reasonable.

## II.     Warrantless Entry Does Not Justify Suppression Of Evidence Seized

Defendant argues that officers made an unlawful entry and conducted a warrantless search of Defendant's motel room without consent. The law is well-settled that, absent consent and "'[a]bsent exigent circumstances,'" the "'firm line at the entrance to the house ... may not reasonably be crossed without a warrant.'" *Kirk v. Louisiana*, 536 U.S. 635, 636 (2002) (quoting *Payton v. New York*, 445 U.S. 573, 590 (1980)).

The Government has not substantively addressed the issue of consent. Nor has the

Government apprised the Court of any exigency that would justify the officers' warrantless entry into room 235. Instead, the Government argues that suppression is not warranted because the independent source doctrine, the inevitable discovery doctrine and/or the good faith exception apply to the instant facts and therefore shield against the exclusion of evidence.

### A. Independent Source Doctrine

The Court need not decide the issue of consent or the issue of exigent circumstances because, based upon the very credible testimony of Detective Price, the independent source doctrine is directly applicable to the instant facts and consequently shields against suppression of the evidence seized from room 235.

The independent source doctrine requires courts to admit evidence "if the government can show that it was discovered through sources 'wholly independent of any constitutional violation.'" *United States v. Leake*, 95 F.3d 409, 412 (6th Cir. 1996) (quoting *Nix v. Williams*, 467 U.S. 431, 433 (1984)). The doctrine's rationale is that "police who carry out a search that they should not have carried out should be put in the same, but *no worse*, position than they would have been absent any error or misconduct." *United States v. Jenkins*, 396 F.3d 751, 758 (6th Cir. 2005) (emphasis in original). The doctrine can apply in situations, where, as here, officers initiate a warrantless entry/search of a premises and later obtain a valid search warrant for said premises.

In order to establish that the doctrine applies to a warrant based on both legally and illegally obtained information, the Government must show, by a preponderance of the evidence, that: (1) the initial search did not prompt officers to seek a warrant for the second search; and (2) that a neutral magistrate would have issued the search warrant even if not presented with the

information obtained from the illegal search. *United States v. Williams*, 656 Fed. App'x 751, 754 (6th Cir. 2016) (citing *Jenkins*, 396 F.3d at 758, 761)).

The first showing is a fact-based inquiry that requires the Court to assess the record. *Id.* (citing *Murray v. United States*, 487 U.S. 533, 540 n.2 (1988)). An officer's testimony as to whether the illegal search led police to seek a warrant can be probative as to this issue. *Id.* However, "[w]here the facts render [officer] assurances implausible, the independent source doctrine will not apply." *Id.* (quoting *Murray*, 487 U.S. at 540 n. 2)).

The second showing can be established "by excising the illegally obtained information from the affidavit and then deciding whether the remaining *legally* obtained information sufficiently supports a finding of probable cause to search." *Id.* (citing *Jenkins*, 396 F.3d at 761).

### i. The Initial Search Did Not Prompt Officers To Seek A Search Warrant

Here, the first showing has been made by a preponderance of the evidence. Detective Price unequivocally testified that he would have sought a search warrant for room 235 regardless of whether the Southfield police officers made entry into room 235. Price stated that obtaining a search warrant in such situations was the protocol he followed in 2011. Moreover, Price testified that he believed he had sufficient probable cause for a search warrant *before* he entered room 235 based on his conversation with MV-1, the corroborating Backpage advertisement and his training and experience. Detective Price went to room 235 *only* because he "still had things to deal with prior to typing out a search warrant," which included taking Defendant to the Michigan State Police post. The Court also finds it worth noting that the evidence that Price observed in room 235 and later cited in his affidavit–cellular phones, money and condoms–could *not* have prompted him to seek a warrant because these items are not inherently incriminating, unlike the

incriminating nature of the statements made by MV-1 and MV-1's prostitution advertisement.

### ii. The Legally Obtained Information In The Affidavit Support A Finding Of Probable Cause

As to the second showing, the Court must excise the illegally obtained information from the legally obtained information in the affidavit to determine whether the legally obtained information supports a finding of probable cause. A magistrate judge issuing a warrant must have a "substantial basis for concluding that probable cause existed." *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005) (internal quotation omitted). Probable cause exists "when there is a fair probability, given the totality of circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (internal quotation omitted).

A magistrate judge is required to "review the totality of the circumstances 'to make a practical, common-sense' determination of whether probable cause is present." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 644 (6th Cir. 2003) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In so doing, a magistrate judge "may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept." *United States v. Lawson*, 999 F.2d 985, 987 (6th Cir. 1993) (internal quotation omitted).

Here, the illegally obtained information in the affidavit only pertained to Price's observation of cell phones, money and condoms. The remaining information in the affidavit was not obtained as a result of the officers' warrantless entry and instead, arose from MV-1's prior statements, the prostitution advertisement on the Backpage website and Detective Price's specialized training and 16 years of experience.

The affidavit contained the following legally obtained information: (1) MV-1 was encountered walking around the Red Roof Inn: (2) MV-1 stated that she was 16 years old; (3) MV-1 was staying in room 235 with her boyfriend, "Nick;" (4) MV-1 had a prostitution advertisement on www.backpage.com; (5) MV-1 stated that "Nick" took pictures of her on his cellular phone and posted them to the Backpage website; (6) MV-1 had several dates on that date and had made approximately $400; (7) the $400 was stored in the safe located in room 235; and (8) MV-1 had been prostituted by "Nick" in the past at his apartment in Lansing.

The affidavit also contained allegations regarding Detective Price's 16 years of experience. Specifically, that: (1) Detective Price was a member of the Michigan State Police; (2) that Detective Price was assigned to federal task forces investigating gangs and violent crime for 16 years; (3) that Detective Price investigated over 1,000 criminal investigations; (4) that Detective Price has received specialized training in violent crimes, homicides, drug trafficking, sex crimes, sexual exploitation against children and prostitution; (4) that Detective Price's training and experience taught him that suspects involved in prostitution will use cellular phones and computers to facilitate prostitution; (5) that Detective Price's training and experience taught him that suspects involved in prostitution hide, store and keep money for years; and (6) that Detective Price's training and experience taught him that suspects involved in prostitution keep illegal drugs at their residence to give to prostitutes as a reward or a form of control.

This untainted information created a reasonable nexus between sex trafficking and room 235 and permitted the magistrate judge to reasonably infer that there would be evidence of sex trafficking in room 235. Notably, the affidavit states that MV-1 was staying in room 235, that dates had taken place earlier that day and that the money made from the dates was located in her

motel room.  These facts obviously lead to the inference that evidence of sex trafficking could be found in room 235.  Moreover, MV-1's statements that "Nick" had taken pictures of her on his cellular phone and posted her pictures on backpage.com permit the reasonable inference that a cellular phone was used to perpetrate this crime and that the cellular phone could be located in room 235, where MV-1 and "Nick" were staying.  The Court finds that MV-1's statements, coupled with her advertisement on the Backpage website and Detective Price's extensive training and experience, sufficiently support a finding of probable cause.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that Defendant's Motion to Suppress Evidence (Doc. # 56) is **DENIED**.

**IT IS SO ORDERED**.

                                                  S/Sean F. Cox  
                                                  Sean F. Cox  
                                                  United States District Judge

Dated:  January 10, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 10, 2017, by electronic and/or ordinary mail.

                                                S/Jennifer McCoy  
                                                Case Manager